IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Loletta L. McGowan,                          :
                Plaintiff            :     Civil Action 2:12-cv-00520

     v.                                      :     Judge Frost

Carolyn W. Colvin,                           :     Magistrate Judge Abel
Commissioner of Social Security,
                Defendant            :

**REPORT AND RECOMMENDATION**

Plaintiff Loletta L. McGowan brings this action under 42 U.S.C. §§405(g) and 13838(c)(3) for review of a final decision of the Commissioner of Social Security denying her application for Social Security Disability and Supplemental Security Income bene-fits. This matter is before the Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.** On November 9, 2004, Loletta L. McGowan slipped and fell as she was carrying boxes up a ladder at work. When she returned to work, she re-injured her back as she was lifting 50-pound bags into a vehicle.

The alj found that McGowan retained the ability to perform a reduced range of sedentary work involving simple, repetitive tasks. Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge erred in determining that the claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms were not credible; and,
- The administrative law judge erred in determining that the claimant's back impairment did not satisfy the criteria for Listing 1.04A.

**Procedural History.**  Plaintiff Loletta L. McGowan filed her applications for disability insurance and supplemental security income benefits on July 25, 2007, alleging that she became disabled on July 25, 2007, at age 37, by back pain, stomach pain, pain in both legs, and three herniated discs.  (R. 55, 79.)  The application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On April 13, 2010, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified.  (R. 426.)  A vocational expert also testified.  On April 26, 2010, the administrative law judge issued a decision finding that McGowan was not disabled within the meaning of the Act.  (R. 27.)  On May 8, 2012, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commiss-ioner of Social Security.  (R. 6-8.)

**Age, Education, and Work Experience.**  Loletta L. McGowan was born Nov-ember 17, 1969.   (R. 55.) She has a high school education.  (R. 83.)  She has worked as a caregiver, cashier, clerk, customer manager, office administrator, and security guard. She last worked July 25, 2007.  (R. 79.)

**Plaintiff's Testimony.**  The administrative law judge fairly summarized McGowan's testimony as follows:

> The claimant testified that she stands 5 feet, 7 inches tall and weighs 240 pounds. She has gained about 40 pounds from her previous weight. She

2

lives in a mobile home with her husband and two adult children who are 20 and 22 years old respectively. She drives on average four times a week.

Claimant further testified that she stopped working in August 2007 as an office administrator because she could not sit very long due to back pain. She had injured her back on a prior job at Wal*Mart, and had received some reimbursement for medical care from workers' compensation for 18 months. She said that she suffered from constant pain in her lower back that travels down into her foot. Her doctor has recommended that she undergo a surgical fusion on her spine, but workers' compensation has denied payment for that form of treatment. She stated that Vicodin had not been effective (in controlling the pain) for the past five months. Before that, Vicodin reduced the pain by one-third. Her doctor told her that she has only 50 percent kidney function. She did not urinate as often as she should, but sometimes she urinated without warning. She used to take a heart pill, but she no longer had enough money to go to the doctor for her heart problem.

Claimant also testified that she suffered from anxiety. When she felt anxious, she became very mean and cried. She has been taking Valium for at least two years. She could not sleep without the Valium.

Claimant reported that she completed high school in special education classes. She was able to read except for some "big words."

The claimant testified further that she spent a typical day laying around or sitting outside while watching her grandbaby and/or watching television. She fixed meals and washed the dishes, but she could not vacuum. She puts clothes in the dryer, but it hurts for her to bend down. She went to the grocery store two or three times a week but spends maybe just a half hour shopping. She attends church every Sunday. She may visit relatives two times a week. She no longer has any hobbies. She tried to do some gardening last year, but it hurt too much and she had to lie down on the ground. She tried to mow the grass, but it hurt too much to walk across the grass. She got three hours of sleep at night and two during the day.

Claimant estimated that she could walk a half block, stand for 15 minutes, and sit for 5-to-10 minutes only at a time. She could only lift 5 pounds. She said she lay down most of the day used a cane when walking to prevent falling, especially when on uneven terrain.

(R. 18-19.)

**Medical Evidence of Record.**  The administrative law judge's decision fairly sets out the relevant medical evidence of record.  This Report and Recommendation will only briefly summarize that evidence.

**Physical Impairments.**

MRIs taken on November 16, 2004 of McGowan's spine revealed mild desiccation of the T8-9 and T10-11 discs and mild desiccation of the L4-L5 and L5-S1 discs with mild central bulge. There was mild osteoarthritis of the L5-S1 interspace. (R. 149-50.)

W. Scott Bolz, M.D. On May 17, 2005, Dr. Bolz, an orthopedic surgeon, examined plaintiff and reviewed her November 16, 2004 MRIs of her spine. On examination, her range of motion was from 0 to 30 degrees of flexion only with pain. She was tender all about the right lumbar paravertebrals and sacroiliac and sciatic notch area. She could stand on heels and toes. There was no motor deficit. She had 1½ cm of right calf atrophy. Straight leg raising seated on the right was positive for right lower extremity radiating pain at 70-80 degrees and positive for back pain only on the left side at 90 degrees. Dr. Bolz reviewed her MRIs and concluded that the report was wrong. The report failed to note the herniated nucleus pulposus at L5-S1 that was right-sided and obliterated the nerve root on that side and was consistent with the findings of his physical examination. (R. 207.)

On December 31, 2005, Dr. Bolz indicated that he was unable to provide the treatment plaintiff required because of the incorrect MRI report. (R. 206.)

4

A November 1, 2006 CT lumbar spine with contrast showed mild disc protrusion at the L5-S1 level accompanied by vertebral body spur formation. Axial post-myelogram CT images suggested the vertebral body spur formation approached the descending right S1 root sheath without displacement. No asymmetrical effacement of the nerve roots was detected on the myelographic views on postmyelogram CT. (R. 200-01.)

On November 10, 2006, Dr. Bolz noted that the myelogram/CT scan showed disc protrusion at the L5-S1 level.

On March 6, 2007, plaintiff reported that she fell and injured her neck and shoulder on February 27, 2007. (R. 198.)

Emily Yu, M.D. and Daryl Sybert, D.O. On July 10, 2007, Drs. Yu and Sybert examined plaintiff at the request of Dr. Bolz. Plaintiff complained of persistent low back pain radiating in the right lower extremity. Plaintiff's symptoms had progressively worsened since her injury in 2004. She rated her pain as a ten on a ten-point scale. She reported stabbing pain in the lumbosacral junction and right buttock, lateral thigh and lateral calf. She had pins and needles in the front of the leg and felt weak in her right leg. Standing and sitting made it worse. She had difficulty walking more than thirty feet, bending, twisting, dressing and lifting more than five pounds.

Plaintiff reported that epidural injections had not provided her with any relief. Drs. Yu and Sybert reviewed her November 16, 2004 MRI, which revealed two-level degenerative changes with disc height collapse worse at the L5-S1 level with disc herniations more to the right than the left at that level. Plaintiff also had a central disc

5

herniation at the L4-5 level. A CT myelogram report confirmed that plaintiff had a disc bulge at L4-5 and disc protrusion at the L5-S1 level, which caused right more than left nerve root encroachment.

On physical examination, there was no peripheral edema or temperature changes. Her gait was slow and antalgic with decreased space on the right. She was able to do heel walking but not toe walking due to weakness in her right foot. Range of motion of the lumbar spine was flexion to 40 degrees, extension to 10 degrees, and lateral bending to 10 degrees. McGowan had moderate bilateral lumbar paraspinal spasms and tenderness. There was no atrophy. Sensory examination was decreased on the L4, L5 and S1 distribution on the right side. Straight leg raising was positive in the sitting and supine positions for right lower extremity pain. (R. 344-46.)

On March 18, 2008, McGowan reported worsening leg pain on the right with the leg giving out secondary to pain. Her back pain and leg symptoms had grown worse over the past six months. On physical examination, plaintiff had pinpoint tenderness over the left and right gluteal areas, with the right more painful than the left. On bench testing, she had some give-way weakness with plantar flexion and dorsiflexion secondary to pain. Straight leg raising was negative on the right, but it did recreate some proximal right buttock and low back symptoms. Reflexes were diminished at the ankle and knee. Long tract signs were absent. Lumbar deconditioning was noted. Dr. Sybert diagnosed two-level lumbar disc degeneration at L4-5 and L5-S1 with post-traumatic aggravation. (R. 394-96.)

On May 26, 2009, Dr. Sybert noted that plaintiff had been authorized for disc herniation at the L5-S1 segment. Dr. Sybert said that plaintiff was a candidate for focal decompression and fusion with instrumentation and interbody arthrodesis at L5-S1 to experidate nerve root recovery and pain relief. (R. 339.)

William D. Padamadan, M.D. On October 18, 2007, Dr. Padamadan evaluated McGowan at the request of the Bureau of Disability Determination. Plaintiff reported pain when sitting or standing for any length of time. She indicated that she had to lie down for relief, but she continued to complain of pain when lying down during the examination. Dr. Padamadan noted that he reviewed her EMG, which showed no radiculopathy. Plaintiff had no paresthesias of the perineum, foot drops, falls, or incontinence. Dr. Padamadan noted that plaintiff was quite brisk in her activities of getting in and out of the chair and examining table.

On physical examination, Dr. Padamadan noted that plaintiff had diffuse tenderness to superficial touch due to overreaction. There was no paraspinal muscle spasm or specific area of tenderness. Plaintiff stated that she could not perform the straight leg raising in supine position because it caused her pain. Her flexion of the hips and knees were satisfactory. Straight leg raising in the sitting position was 70 degrees and her forward bend on standing was 70 degrees. There were no sensory abnormalities of touch pressure, or pain. Her knee and ankle reflexes were intact, suggesting normal L4 and S1 roots.

Dr. Padamadan concluded that plaintiff had no limitation of her physical activities. (R. 162-64.)

Esberdado Villanueva, M.D. On October 29, 2007, Dr. Villanueva, a State agency reviewing physician, completed a physical residual functional capacity assessment. Dr. Villanueva opined that McGowan could occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds.  She could stand and/or walk about 6 hours in an 8-hour day. He concluded that plaintiff's statements concerning the severity of her symptoms were not consistent with the objective evidence in the record. Her statements were only partially credible. Dr. Villanueva gave weight to the opinion of Dr. Padamadan. (R. 170-77.)

On March 10, 2008, Leslie Green, M.D. reviewed the evidence in the record and Dr. Villanueva's assessment and concurred in his assessment.

Community Hospital. On November 18, 2007, plaintiff was injured in a motor vehicle accident and treated in the emergency room. (R. 322.)

Shahida Aziz-Khan, M.D. On November 18, 2008, Dr. Aziz-Khan, plaintiff's treating physician, completed a Basic Medical evaluation for Ohio Jobs & Family Services. She noted that plaintiff was diagnosed with disc degeneration at L4-5 and L5-S1 with radiculopathy. Dr. Aziz-Khan opined that McGowan's ability to walk and stand during a workday was limited to one hour total and that she was unable to walk or stand for more than 30 uninterrupted minutes. Plaintiff was limited to two hours of sitting, and she could only sit for 30 minutes at a time without interruption. Plaintiff

8

could frequently lift up to 10 pounds and occasionally lift up to 20 pounds. She was moderately limited in her ability to push or pull. She was markedly limited in her abilities to reach, handle or perform repetitive foot movements. She was extremely limited in her ability to bend.

James E. Lundeen, Sr., M.D. On September 20, 2008, Dr. Lundeen examined plaintiff to evaluate her November 9, 2004 injury. Plaintiff reported that she had difficulty performing housework, showering, driving, walking, standing and sitting. McGowan complained of numbness, tingling and burning in her back. Prolonged physical activity increased her symptoms. Dr. Lundeen opined that the permanent partial impairment for plaintiff's claim in terms of percentage of the whole person was 35%. (R. 378-80.)

On February 6, 2009, Dr. Lundeen indicated that plaintiff's condition continued without significant change. With seated straight leg raising, plaintiff had 20 degrees on the right and 50 degrees on the left. Painful muscle spasms were present in her back. Her gait was slow. Flexion was 30 degrees, and extension 5 degrees. Right lateral flexion was 5 degrees, and left lateral felxion was 15 degrees. Dr. Lundeen recom-mended that plaintiff be evaluated for physical therapy.(R. 376-77.)

**Psychological Impairments.**

Daniel D. Hrinko, Psy.D. On February 27, 2008, Dr. Hrinko, a psychologist, evaluated plaintiff at the request of the Bureau of Disability Determination. McGowan reported that she spent much of her time attempting to obtain physical comfort. She

9

needed help in the shower because she could not bend. She could perform some light duty housework as long as she could change positions or sit down after 10-15 minutes. She needed help putting on her socks and shoes, and she could not shop or do laundry without assistance. She could drive for short periods of time. Her mental status examination was unremarkable. Dr. Hrinko diagnosed adjustment disorder with depressed mood. He assigned her a Global Assessment of Functioning ("GAF") score of 65. Dr. Hrinko concluded that plaintiff's ability to relate with coworkers and supervisors was mildly impaired. Dr. Hrinko believed that if plaintiff could find a job within her physical capabilities, she would likely be frustrated and embarrassed by the limited responsibilities she could perform. Her ability to understand and follow instructions was not impaired. Her ability to maintain attention to perform simple and repetitive tasks was not impaired. Her ability to withstand the stresses and pressures of employment was mildly impaired.  (R. 231-33.)

Tonnie Hoyle, Psy.D. On March 10, 2008, Dr. Hoyle, a psychologist, completed a psychiatric review technique. Dr. Hoyle concluded that plaintiff's mental impairment was not severe. Plaintiff was diagnosed with an adjustment disorder with depressed mood. Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. Dr. Hoyle noted that plaintiff had exhibited no signs of depression, and her insight was good. Plaintiff saw her emotional problems

directly connected to her physical problems. Dr. Hoyle concluded that plaintiff did not appear to be more than mildly limited by her mental impairment. (R. 237-50.)

**Administrative Law Judge's Findings.**

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2.  The claimant has not engaged in substantial gainful activity since July 25, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: 1) lumbar spine degenerative disc disease; 2) generalized anxiety disorder; and 3) borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant lacks the residual functional capacity (RFC) to perform greater than a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). In particular, she lacks the RFC to: 1) lift more than 5 pounds frequently or 10 pounds occasionally; 2) do any job that does not give her freedom to alternate sitting and standing positions at 30-minute intervals throughout the day; 3) crawl or climb; 4) crouch, stoop, or kneel more than occasionally; 5) have any exposure to significant vibration; or 6) do other than simple repetitive tasks.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on November 17, 1969 and was 37 years old and classified as a younger individual on the alleged disability onset date 920 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from July 25, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 19-27.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id*.  *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must

12

"'take into account whatever in the record fairly detracts from its weight.'"

*Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir.

1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v.*

*Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**   Plaintiff argues that the decision of the

Commissioner denying benefits should be reversed because:

- The administrative law judge erred in determining that the claimant's
  statements regarding the intensity, persistence, and limiting effects of
  her symptoms were not credible. Plaintiff argues that the administrative
  law judge's credibility assessment lacks substance. The record contains
  disagreement amongst the doctors with respect to plaintiff's
  appropriate diagnosis and treatment. Three doctors indicate that
  McGowan's subjective complaints were supported by the objective
  findings of physical examinations, MRIs, CT scans, or x-rays. Two
  physicians, however, disagreed with the diagnoses of plaintiff's treating
  physicians. The administrative law judge acknowledged the disagree-
  ment between the doctors and noted that McGowan did not seem to
  have a very active lifestyle. The administrative law judge failed to
  discuss the severity or limiting effects of her symptoms. Plaintiff argues
  that the administrative law judge failed to consider all the relevant
  factors in relation to her subjective complaints. Plaintiff maintains that

13

the minimal daily life activities that she performs are not comparable to typical work duties and cannot be relied upon to discredit her allegations. McGowan contends that she could not sit or stand for more than fifteen minutes at a time and that she had to lie down for relief.

- The administrative law judge erred in determining that the claimant's back impairment did not satisfy the criteria for Listing 1.04A. Plaintiff argues that the administrative law judge incorrectly concluded that there was no evidence of significant nerve root injury or compression. The administrative law judge also incorrectly found that plaintiff retained good strength and ambulated effectively. Dr. Bolz, plaintiff's orthopedic surgeon, concluded that her November 2004 MRI report was incorrect. He concluded that plaintiff had a herniated nucleus pulposus that was right-sided and obliterated the nerve root on that side perfectly consistent with her physical examination. CT scan results revealed that plaintiff had a spur formation more closely apposed to the right descending S1 nerve root. Plaintiff further maintains that her medical records demonstrate that her nerve root compression was characterized by neuro-anatomic distribution of pain, limitation of spinal motion, motor loss accompanied by sensory or reflex loss, and positive straight leg testing. Plaintiff argues that the administrative law judge improperly relied on the evaluations of consultative examiners.

14

**Analysis.** Pain is an elusive phenomena.  Ultimately, no one can say with absolute certainty whether another person's subjectively disabling pain and other symptoms preclude all substantial gainful employment.  The Social Security Act requires that the claimant establish that he is disabled.  Under the Act, a "disability" is defined as "inability to engage in any substantial gainful activity *by reason of any medically determinable or mental impairment* which can be expected . . . to last for a continuous period of not less than 12 months.  . . ."  42 U.S.C. §423(d)(1)(A) (emphasis added).

Under the provisions of 42 U.S.C. §423(d)(5)(A), subjective symptoms alone cannot prove disability. There must be objective medical evidence of an impairment that could reasonably be expected to produce disabling  pain or other symptoms :

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.  Objective medical evidence of pain or other symptoms established by

15

medically acceptable clinical or other laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

The Commissioner's regulations provide a framework for evaluating a claimant's symptoms consistent with the commands of the statute:

(a) *General*. In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. By objective medical evidence, we mean medical signs and laboratory findings as defined in §404.1528(b) and (c). By other evidence, we mean the kinds of evidence described in §§404.1512(b)(2) through (6) and 404.1513(b)(1), (4), and (5) and (e). These include statements or reports from you, your treating or examining physician or psychologist, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work. We will consider all of your statements about your symptoms, such as pain, and any description you, your physician, your psychologist, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work. However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled. In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how

16

> your symptoms affect you.  (Section 404.1527 explains how we
> consider opinions of your treating source and other medical
> opinions on the existence and severity of your symptoms,
> such as pain.)  We will then determine the extent to which
> your alleged functional limitations and restrictions due to pain
> or other symptoms can reasonably be accepted as consistent
> with the medical signs and laboratory findings and other
> evidence to decide how your symptoms affect your ability to
> work.

20 C.F.R. §404.1529(a). A claimant's symptoms will not be found to affect his

ability to work unless there is a medically determinable impairment that could

reasonably be expected to produce them. 20 C.F.R. § 404.1529(b). If so, the Com-

missioner then evaluates the intensity and persistence of the claimant's pain and

other symptoms and determines the extent to which they limit his ability to

work. 20 C.F.R. § 404.1529(c). In making the determination, the Commissioner

considers

> all of the available evidence, including your history, the signs and
> laboratory findings, and statements from you, your treating or
> nontreating source, or other persons about how your symptoms
> affect you. We also consider the medical opinions of your treating
> source and other medical opinions . . . .

*Id.*

In this evaluation of a claimant's symptoms, the Commissioner considers

both objective medical evidence and "any other information you may submit

about your symptoms." 20 C.F.R. § 404.1529(c)(2). The regulation further pro-

vides:

17

Because symptoms, such as pain, are subjective and difficult to
quantify, any symptom-related functional limitations and restric-
tions which you, your treating or nontreating source, or other
persons report, which can reasonably be accepted as consistent
with the objective medical evidence and other evidence, will be
taken into account as explained in paragraph (c)(4) of this section in
reaching a conclusion as to whether you are disabled. We will
consider all of the evidence presented, including information about
your prior work record, your statements about your symptoms,
evidence submitted by your treating or nontreating source, and
observations by our employees and other persons. Section 404.1527
explains in detail how we consider and weigh treating source and
other medical opinions about the nature and severity of your im-
pairment(s) and any related symptoms, such as pain. Factors rele-
vant to your symptoms, such as pain, which we will consider in-
clude:

> (I) Your daily activities;

> (ii) The location, duration, frequency, and intensity of your
> pain or other symptoms;

> (iii) Precipitating and aggravating factors;

> (iv) The type, dosage, effectiveness, and side effects of any
> medication you take or have taken to alleviate your pain or other
> symptoms;

> (v) Treatment, other than medication, you receive or have re-
> ceived for relief of your pain or other symptoms;

> (vi) Any measures you use or have used to relieve your pain or
> other symptoms (e.g., lying flat on your back, standing for 15 to 20
> minutes every hour, sleeping on a board, etc.); and

> (vii) Other factors concerning your functional limitations and
> restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). When determining the extent to which a claimant's symp-

toms limit his ability to work, the Commissioner considers whether the claimant's

18

statements about the symptoms is supported by or inconsistent with other evidence of

record:

> In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, we consider all of the available evidence described in paragraphs (c)(1) through (c)(3) of this section. We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

 20 C.F.R. § 404.1529(c)(4).

SSR 96-7p explains the two-step process established by the Commissioner's regulations

for evaluating a claimant's symptoms and their effects:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. The finding that an individual's impairment(s) could reasonably be expected to produce the individual's pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms.  . . .

>  Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and

limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements. In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. § 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

    1. The individual's daily activities;

    2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

    3. Factors that precipitate and aggravate the symptoms;

    4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

    5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

    6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g. lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

    7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Case law interpreting the statute and regulations. At the outset, it is important to keep in mind that symptoms are the claimant's "description of [his/her] physical or mental impairment." 20 C.F.R. § 404.1528(a). Inevitably, evaluating symptoms involves making credibility determinations about the reliability of the claimant's self-report of his symptoms. *Smith ex rel E.S.D. v. Barnhart*, 157 Fed.Appx. 57, 62 (10th Cir. December. 5, 2005) (not published)("Credibility determinations concern statements about symptoms.")

"Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain." *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 247 (2007); SSR 96-7p, 1996 WL 374186 (July 2, 1996). That test was first set out in *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). First, the Court must determine "whether there is objective medical evidence of an underlying medical condition." If so, the Court must then

> examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan*, 801 F.2d at 853. Any "credibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Secretary of Health and Human Services*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers,* 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir.1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir.1990);

*Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir.1981)).  The ALJ is required to explain her credibility determination in her decision, which "'must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *See id.* (quoting SSR 96-7p).  Furthermore, the ALJ's decision must be supported by substantial evidence.  *Rogers,* 486 F.3d at 249.

<u>Discussion of ALJ's credibility determination</u>. Plaintiff argues that the administrative law judge failed to reference all the factors set out in Social Security Ruling 96-7p for assessing a claimant's credibility. The administrative law judge summarized plaintiff's testimony about the location, duration, frequency or her pain, considered her daily activities, summarized her treating doctors' reports considering her pain, and considered her pain medication. The administrative law judge expressly considered whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of her pain and other symptoms were substantiated by objective medical evidence:

> The restriction of the claimant to the physical demands of a limited range of sedentary work gives her considerable benefit of doubt with respect to the conflicting interpretations of her MRIs of record. The BDD's reviewing medical consultants, Dr. Villanueva and Dr. Green, concluded that she could do medium work activity (Exhibits 7-F and 13-F). The medical assessments of Dr. Villanueva and Dr. Green arguably have some degree of merit in the wake of the generally unremarkable physical findings reported by Dr. Padamadan (Exhibit 6-F). However, more recent reports from examining specialists suggests that the claimant's lumbar spine degenerative disc disease is more advanced than was recognized by the BDD medical reviewers, though the debate still continues as to whether

she has actual disc herniation (Exhibits 22-F and 23-F). Accepting an interpretation that she does in fact have herniated discs, the claimant reasonably would be expected to be restricted from engaging in more than mild exertion at a sedentary level. At the same time, there is still no consistent evidence to conclude that she has nerve root involvement that would preclude milder exertion at a sedentary occupational level, especially if she is allowed to alternate sitting and standing periodically to relieve any buildup of discomfort. She has no focal weakness, and the findings with respect to her gait, atrophy, etc., are not entirely consistent. Appropriate postural limits are added as excessive movement may aggravate her symptoms. She is also removed from exposure to any significant vibration, also a potential source for irritation of her back symptoms.

The RFC adopts the restriction to simple repetitive tasks, also a concession of some benefit of doubt to claimant since the most detailed psychological examination in the record failed to indicate any significant functional problems (Exhibit 11-F). Like her back symptoms, her anxiety has so far been managed conservatively, mostly with medication. If she stays on her medication, she certainly would appear capable of handling the stress of doing at least simple repetitive tasks. Such work would be within her likely borderline intellectual abilities (noting that she had performed even semiskilled and skilled duties in the past).

(R. 23-24.) To the extent that plaintiff's allegations were not substantiated by the objective medical evidence, the administrative law judge properly evaluated the relevant factors in assessing her credibility:

To date the claimant's subjective complaints have been managed con-servatively, although debates among doctors in connection with her workers' compensation claims seem to have clouded the issue of what treatment is appropriate for her back. The record does not corroborate medication side effects that would preclude her from working. She does not seem to have a very active lifestyle, but she does take care of some light household chores, drives, shops, and is able to visit relatives and attend church.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be ex-

23

pected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that are inconsistent with the above residual functional capacity assessment. The above residual functional capacity is adequate to address the location, frequency, duration, and intensity, of claimant's bona fide symptoms as well as any reasonably anticipated aggravating and precipitating factors. Her subject symptoms lack credibility to the extent that they purport to describe a condition of disability for Social Security purposes.

(R. 25.) The administrative law judge properly considered whether she had side effects from medications, her conservative treatment, and her daily activities, and the administrative law judge's credibility determination is supported by substantial evidence.

Listing 1.04A. To meet Listing 1.04A, plaintiff must show compromise of a nerve root with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04A. Dr. Padamadan said that an EMG study showed no radiculopathy, and he found no paresthesias on examination. She had a good range of motion in her hips, knees, and ankles. (R. 162.) There were no sensory abnormalities. (r. 163.) Her motor, sensory, and reflexes were all normal. (R. 164.) There was no muscle atrophy. (R. 166.) Dr. Bolz found no motor deficits in May 2005 (R. 207), and her neurological findings were unchanged in March 2007 falling a fall. (R. 198.)

The administrative law judge concluded that despite some physical signs of lumbar radiculopathy, it was not clear whether plaintiff had actual disc herniations or simply disc bulges or protrusions. (R. 21.) Relying on the opinions of Drs. Padamadan

and Lundeen and the November 1, 2006 CT of McGowan's lumbar spine, the admin-
istrative law judge noted that there was no evidence of significant nerve root injury or
compression. The administrative law judge noted that plaintiff retained "good
strength" and ambulated effectively. (*Id*.) The administrative law judge's decision that
plaintiff did not meet Listing 1.04A is supported by substantial evidence.

From a review of the record as a whole, I conclude that there is substantial evid-
ence supporting the administrative law judge's decision denying benefits.  Accordingly,
it is **RECOMMENDED** that the decision of the Commissioner of Social Security be
**AFFIRMED.**  It is **FURTHER RECOMMENDED** that plaintiff's motion for summary
judgment be **DENIED** and that defendant's motion for summary judgment be
**GRANTED.**

If any party objects to this Report and Recommendation, that party may, within
fourteen (14) days, file and serve on all parties a motion for reconsideration by the
Court, specifically designating this Report and Recommendation, and the part thereof
in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b),
Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and
Recommendation will result in a waiver of the right to *de novo* review by the District
Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v.*

*Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).


                                                    s/Mark R.  Abel
                                                    United States Magistrate Judge